## GILBERT, Admrx v REARDON, Admr

Ohio Appeals, 6th Dist, Sandusky Co

No 264.   Decided March 6, 1933

Rheinfrank & Simmons, Toledo, for plaintiff in error.

Meck & Meck, Toledo, and Stahl, Stahl & Stahl, Fremont, for defendant in error.

LLOYD, J.

The defendant urges two grounds of error for the requested reversal of the judgment of $3500.00 rendered upon the verdict returned by the jury upon the trial of the action,—first, that it is manifestly against the weight of the evidence and, second, that the trial judge erred to the prejudice of the defendant in his general charge to the jury in several particulars.

The members of this court have read the evidence presented in the bill of exceptions and find that there is a direct and emphatic conflict therein upon the issues involved of such nature that this court is precluded from saying that the verdict of the jury is manifestly against the weight of the evidence.

It is claimed that during the trial counsel for plaintiff stipulated that Reardon did not reduce the speed of his automobile as he approached the intersection and that the trial judge in his charge to the jury excluded from the jury consideration of this conceded fact by saying:

"Discussion between counsel and the court and counsel are not evidence. Do not consider these things as evidence; they have their proper places in a lawsuit, but that does not determine any disputed facts, and you must not base your verdict on anything except the evidence and the law. The evidence in this case upon which you will base your verdict are the sworn statements of the witnesses from the witness stand and any exhibits that have been introduced in evidence and * * * any admissions of any of the parties contained in the pleadings. That will be the evidence on which you will decide the case."

Standing alone, this might perhaps be an erroneous instruction, but considering the charge as a whole, we can not so regard it.

Before arguments of counsel to the jury, the trial judge, at the request of defendant, gave to the jury the following written instruction:

"Before argument the court instructs the jury in writing that the plaintiff has conceded in this case that Reardon did not reduce his rate of speed as he approached the intersection and not until the collision occurred. The fact that Reardon was traveling upon the main thoroughfare did not diminish his duty to proceed in a lawful manner and to have due regard for other vehicles upon an intersecting thoroughfare. If you find from the evidence that the conceded failure of Reardon to reduce his speed was negligence and directly contributed in any degree toward causing the collision which ensued, then regardless of whether or not you find that Dr. Ott was negligent, you will return your verdict in favor of the defendant."

And thereafter, in his general charge to the jury, the trial judge said:

"Before argument certain special charges were given you and they are part of the law and you will have them with you and these special charges, with this general charge, you will take as the law in this case, as being the law pertinent to this case."

On Vickery Road, at the approach to Route 34, was a stop sign, and it is contended that the trial judge further erred in his charge in that he said:

"The driver on the intersecting highway is not necessarily bound to stop nor to wait until no cars are in sight, but he or she is bound to observe the sign and then exercise ordinary care, remembering that the other party has the right of way."

Immediately preceding the foregoing, the court said:

"It is conceded in the case that there is a stop sign on the Vickery Road, one on the north and one on the south I believe, of the intersection. And these warning signs are placed there as a warning to travelers on that road that they are coming to a main thoroughfare on which travelers have the right of way. And an ordinarily prudent person will observe the sign and act accordingly. It is his or her duty to look both ways before entering the intersection, and wait for traffic on the main thoroughfare to pass, unless the driver on the main thoroughfare is so far distant from the crossing that a reasonably prudent driver on the intersecting highway might reasonably expect to cross in safety; or unless the person on the main thoroughfare is driving at an excessive and unlawful rate of speed so that the other could not reasonably estimate the speed or make reasonable calculations of the time of his arrival at the intersection."

In view of the clear purport of the entire instruction on this subject, although some other word than "observe" might preferably have been used, ordinary intelligence would understand that the word was not used in the sense that Ott was required to stop regardless of what the facts and circumstances in evidence required that he should do in the exercise of ordinary care.

Again, defendant claims error in that part of the charge which reads:

"Of course, if the person not having such right of way, that is: the person on the left, is already in the intersection, having arrived there first, and is in the exercise of ordinary care crossing it, he has the right to go on across, and in such case, the person having the right of way because of being on the other's right, can not increase his speed and try to cut the other off or drive into him, but must respect the rights of the other who got there first."

It is contended that to so charge the jury is in effect saying that Reardon "had the right to maintain his speed but did not have the right to increase his speed" since

"If the result of either increasing his speed or of maintaining his speed was to drive into the Ott machine, while it was crossing the intersection, the defendant was prejudiced by the court's charge and the jury should have been told that if Dr. Ott was already in the intersection, having arrived there first, and was in the exercise of ordinary care crossing it, then Reardon could not, by reason of being on the right, maintain or increase his speed if by so doing he would drive into the Ott machine. The implication of the charge as given clearly is that Reardon would not be negligent if he maintained his speed but only in the event he increased it."

A reading in its entirety of what was said by the court on this subject, in con-

junction with the requested special instruction of defendant and the reference thereto in the general charge above quoted, plainly evidences that this contention of counsel is untenable.

It was claimed also that the trial judge erred in his charge as to the issue made by the answer of the defendant charging that Reardon was intoxicated at the time of the collision. The court thus charged the jury on this subject:

"There is an allegation in the answer that Daniel Reardon at the time was under the influence of intoxicating liquor, and something has been said about the claim during the trial. You have heard the evidence on that point and will consider it, and it is for you to say from that evidence whether he was or was not under the influence of liquor, and if he was, whether that had anything to do with the accident. On this point, there is perhaps no direct evidence but on account of the allegation on that subject in the answer, the court permitted such evidence on it as the defendant had to offer. Whether the defendant has proven that claim, or has offered any credible evidence to support the claim, is for you to say, and if so, it is for you to say whether that had anything to do with the collision."

It is contended that this language in effect advised the jury that the evidence submitted on this issue was inadequate to sustain the claim of the defendant in this regard. In his brief, defendant says:

"The defendant presented as witnesses two nurses at the hospital who both testified that in their judgment the vomitous emitted from the stomach of Reardon immediately after the accident smelled of intoxicating liquors,"

and that "the attending physician made a statement immediately or very soon after his examination, that Reardon was intoxicated at the time of the accident."

This statement as to the testimony of the two nurses is not quite correct. What one witness said was: "There was a peculiar odor that resembled liquor," and the other nurse, in answer to the question whether in her judgment "That smell was the smell of alcoholic liquor" said: "Yes, sir, it seemed so," but she further testified that there is very often what might be called a sour or fetid breath of persons similarly injured as was Reardon. The attending physician testified that he did not remember the statement accredited to him but another physician testified that on the morning of April 10th this physician told him that Reardon and Eleanor Williamson, who was with Reardon in his automobile, "had been drinking and that you could smell liquor on their breaths." No one who saw Reardon before the accident testified he was intoxicated or that he had drunk intoxicating beverages on the day of the collision. The positive evidence was all to the contrary. Since such evidence as there was warranted the submission of the question to the jury, it would seem that the court should have refrained from directly or indirectly commenting upon the probative value thereof, but in any event in view of the character of the evidence on the subject, what the court said would not in any event constitute prejudicial error.

The foregoing are all of the alleged errors of which counsel for plaintiff in error complains in his brief, and, none of them being prejudicial, the judgment is affirmed.

RICHARDS and WILLIAMS, JJ, concur.